## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **FIMBANK PLC** | § | |
| | § | **CIVIL ACTION NO.**    2:19-cv-264 |
| **v.** | § | |
| | § | |
| **DISCOVER INVESTMENT CORP;** | § | **ADMIRALTY RULE 9(h)** |
| **SAM SHIPPING MANAGEMENT** | § | |
| **S.A.; SHIPPING ASSET** | § | |
| **MANAGEMENT (SAM) S.A.; and** | § | |
| **SPV SAM EAGLE INC.** | § | |

## VERIFIED COMPLAINT

Plaintiff FIMBANK PLC ("Plaintiff" or "FIMBANK") files this Verified Complaint against Defendants Discover Investment Corp. ("Discover"), SAM Shipping Management S.A. ("SAM Panama"), Shipping Asset Management (SAM) S.A. ("SAM Switzerland" or "SAM Geneva"), and SPV SAM Eagle Inc. ("SAM Eagle") (together with Discover, SAM Panama and SAM Switzerland, the "Defendants"), and alleges upon information and belief as follows:

### SUBJECT MATTER JURISDICTION

1.       This is an admiralty or maritime claim within the meaning of Federal Rule of Civil Procedure 9(h) and 28 U.S.C. § 1333.

### PARTIES

2.       At all times relevant to this action, Plaintiff was, and still is, a foreign business entity duly organized and operating under the laws of Malta, with a place of business in Malta.  Plaintiff is principally active in providing international trade

finance and acting as an intermediary to other financial institutions for international settlements, factoring and loan syndications.

3.      Discover is a foreign business entity organized and existing under the laws of Liberia, with a registered address at 80 Broad Street, Monrovia, Liberia. At all material times until about June 24, 2019, Discover was the registered owner of the motor vessel NIKA (formerly the SAM TIGER and now the NORD) (the "ex-NIKA").

4.      SAM Panama is a foreign business entity organized and existing under the laws of Panama, with a registered address at HI-TECH Plaza Building, 10th Floor, 53 East Street, Obarrio, Panama City, Republic of Panama.

5.      SAM Switzerland is a foreign business entity organized and existing under the laws of Switzerland, with a place of business at Rue Robert Ceard 12, Geneva, 1204, Switzerland.

6.      SAM Eagle is a foreign business entity organized and existing under the laws of Switzerland, with a registered address c/o Ballard & Ballard as registered agent, HI-TECH Plaza Building, 53 East Street, Obarrio, Panama City, Republic of Panama.

7.      On information and belief, at all material times, at least Discover, SAM Eagle, and SAM Switzerland have, notwithstanding any registered addresses at different locations or in different countries, actually operated from SAM Switzerland's offices in Geneva, Switzerland.

8.     On information and belief, at all material times and for reasons further set forth below, Discover, SAM Panama, SAM Switzerland and SAM Eagle have constituted alter egos of one another such that they should be treated as a single entity for the purpose of the requested attachment sought herein.

## FACTS

### The Cargo

9.     In 2018, Plaintiff provided banking facilities to non-parties AOS Trading DMCC and AOS International SA (collectively, "AOS") to finance the purchase of presold grains and feed by AOS for shipment to Egypt.  Before advancing the money, Plaintiff would require as security either the original documents of title or (if copy documents of title were provided) an undertaking from the holder to provide original documents upon receiving payment.  The title documents would then be held as security to secure the advance made by Plaintiff to finance the transaction.

10.     On or about March 29, 2018, Plaintiff received a request from AOS to draw down on the banking facility to finance the purchase of 51,300 mt of Ukrainian Milling Wheat with a stated buying price of $11,337,006 (the "Financed Cargo") to be loaded onto the ex-NIKA, and to finance the carriage payment.

11.     As indicated above, the Financed Cargo was to be, and was carried by the ex-NIKA, and, at that time, Discover was the ex-NIKA's registered owner.

12.     On or about April 5, 2018, non-party Credit Suisse (Switzerland) Ltd sent to the Plaintiff 61 sets of "Bill of Lading (Originals) nrs. 1 to 61" with respect to

3

the Financed Cargo.  On April 13, 2018, Plaintiff remitted the sum of $10,593,156 to Credit Suisse (on behalf of AOS) in respect of the Financed Cargo.  Plaintiff thus received and held the said bills of lading as security for the advance it made for purchase of the Financed Cargo.

13.     The NIKA carried the Financed Cargo to Egypt where it was discharged at Alexandria.

14.     Plaintiff sent complete sets of the bills of lading to AOS's various buyers, and/or their financial institutions, for collection by and on behalf of AOS.

15.     By on or about June 12, 2018, Plaintiff had been informed that all of the Financed Cargo had been collected from the warehouse, but Plaintiff was still awaiting payment in respect of 17,300 mt of the Financed Cargo, and it chased payment.

16.     However, one of the financial institutions (Blom Bank Egypt) returned the original documents which had been sent to it (specifically, Bills of Lading Nos. 1 to 26 and 61) (the "Relevant Bills of Lading").  The Relevant Bills of Lading concerned cargo carried thereunder in the total amount of 17,300 mt (the "Relevant Cargo").

17.     It is Plaintiffs' position that the Relevant Cargo was mis-delivered by the ex-NIKA such that, amongst others, Discover is liable for Plaintiff's loss.

**The Relevant Bills of Lading**

18.     The Relevant Bills of Lading were dated March 22, 2018 and consigned to order.  They name Inerco Trade S.A. of Switzerland, as shipper, and AOS Trading

4

and Shipping, as notify party. They all state that they were issued by Odessa Maritime Agency "Interbroker" as agent on behalf of the Master of the ex-NIKA (for which Discover was the registered owner at the time when the bills were issued).

19.      The Relevant Bills of Lading referred on their face to "Charter-Party dated: 26.02.2018", and Clause 1 of the Conditions of Carriage (on the reverse of such bills) stated that "All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the Law and Arbitration Clause, are herewith incorporated".

**Correspondence Regarding Charter Party, and the Standstill Agreement**

20.      On or about February 8, 2019, Maltese attorneys for Plaintiff wrote to Discover stating that Plaintiff was the lawful holder of the Relevant Bills of Lading, that they understood the Relevant Cargo had been discharged to a third party without presentation of the Relevant Bills of Lading and seeking proposals for settlement.

21.      Lawyers acting for Discover thereafter inspected the Relevant Bills of Lading.

22.      A dispute subsequently developed as to what precise charter party dated February 26, 2018 was incorporated in the Relevant Bills of Lading and thereby as to what the applicable law and arbitration clause was.

23.      The lawyers and P&I Club representatives for Discover sent copies of various fixture recaps and charter parties to Plaintiff's Maltese attorneys.  In that regard:

a. On March 1, 2019, the lawyers for Discover wrote that they were attaching "the charterparty dated 26.2.2019 [sic] which is incorporated in the b/ls". The documents which they attached consisted of a time charter for the vessel MV SAM HAWK, dated March 4, 2013 (the "SAM HAWK CP"), and Additional Clauses to a charter of the MV SAM LION, dated August 1, 2013 (the "SAM LION Riders");

b. Because the SAM HAWK CP was a time charter, Plaintiff's Maltese attorneys continued to seek a copy of a voyage charter dated February 26, 2018;

c. On March 5, 2019, a representative for Discover's P&I Club forwarded a copy of a fixture recap, dated February 26, 2018 for a time charter trip of the ex-NIKA (the "Time Charter Recap") concluded between Discover and non-party BPG Shipping Company DMCC. The covering correspondence stated "I enclose a copy of the recap for the NIKA, which incorporates the c/p proforma and riders sent to you separately by HFW. You will note that the date is 26th Feb 2018. Trust we can now agree that this c/p is incorporated in the bs/l. Looking forward to hearing from you as soon as possible. The sensitive financial info has been deleted."; and

d. Also on March 5, 2019, Discover's attorneys sent correspondence to Plaintiff's Maltese attorneys to which they attached copies of the

NIKA Recap, followed by the SAM HAWK CP, followed by the SAM
LION Riders.   The covering message stated, in pertinent part,
"Attached, as requested, a complete (redacted) copy of the Recap and
the Pro Forma terms that were attached thereto."

24.     It is not possible to determine, at this stage, what documents had
actually been attached to the Time Charter Recap.   Furthermore, disagreement
and/or uncertainties regarding the law and arbitration terms which were actually
incorporated into the Relevant Bills of Lading remained.

25.     On March 29, 2019, Plaintiff and Discover (along with FIMBank PLC
[Dubai International Financial Centre] Branch) entered into an agreement (the
"Standstill Agreement") pursuant to which (in essence, amongst other things, and
running through June 21, 2019): Discover promised that it would not sell or
otherwise transfer the ex-NIKA; and Plaintiff promised that it would not seek to
arrest / attach the ex-NIKA or its sister vessels.   Further, any applicable time limits
were extended until July 1, 2019.   The Standstill Agreement also provided, at its
Clause 2.5 that "The Parties agree that the [Relevant Bills of Lading] are governed
by English law and claims thereunder are to be pursued in arbitration in London
under LMAA rules".   The Plaintiff's understanding throughout the various
communications and discussions in relation to the Standstill Agreement was that
Discover wished to trade the vessel, and that neither Discover nor the P&I Club ever
said anything to suggest that Discover were or might be considering selling the ex-
NIKA.

**Notice of Arbitration, the ex-NIKA's Sham Sale, and the Freezing Order**

26.     On June 26, 2019, Plaintiff (through attorneys) sent a Notice of Arbitration to Discover.   Amongst other things, that Notice referred to the Defendant's agreement in the Standstill Agreement that claims under the Relevant Bills of Lading should be referred to arbitration in London under LMAA rules.  That notice further appointed Plaintiff's arbitrator and called upon Discover do likewise.

27.     On June 27, 2019, Plaintiff (through attorneys) requested security for its claims in the total amount of $4,900,000 (comprised of $3,857,900 for its principal claim, $462,948 for interest at 6% for 2 years running, and $500,000 for costs), all with a reservation of rights to adjust such figures as needed.  Plaintiff requested that Discovery post such security by COB on July 1, 2019.

28.     In the absence of response to that demand for security, Plaintiff investigated the ex-NIKA's status and learned that the NIKA had been renamed "NORD", and her registered ownership changed to non-party Anchor Nautical SA. The Liberian Certificate of Registry regarding the NORD (ex-NIKA) was stated as having been issued on June 24, 2019 (ie., a very short while after running of the Standstill Agreement's express restrictions).

29.     Following on the heels of that apparent renaming and change-of-ownership, on July 12, 2019, Discover's attorneys responded to the Notice of Arbitration.  They seemingly asserted that the Standstill Agreement's provisions concerning arbitration with respect to the Relevant Bills of Lading was not a freestanding provision but merely one which clarified arbitration terms in the

documents which they contend were incorporated in the Relevant Bills of Lading. Discover's attorneys went on to suggest that the Notice of Arbitration was defective, and they purported to reserve all of Discover's "rights and remedies . . . including arguments that the claims under the Bills of Lading are already time-barred."

30.     Plaintiff respectfully submits that all of the foregoing tactical maneuvering by Discover evidenced a hardened intent to rely upon, at a minimum, sharp tactics to frustrate a creditor claimant.

31.     On July 30, 2019, Discover's attorneys did appoint an arbitrator but contended that they were doing so without prejudice to apparent assertions that the Notice of Arbitration was defective, and that Plaintiff's appointment of its arbitrator was somehow invalid.

32.     Thereafter, Plaintiff made an ex parte application for a freezing injunction before the High Court of Justice, Business and Property Court of England and Wales, Commercial Court the ("English Court").  The initial application was not granted but, pursuant to a renewed application, the English Court granted a freezing injunction by way of an order issued on August 22, 2019.

33.     It should be noted that a freezing injunction does not provide, and here has not provided, security for Plaintiff's underlying claims.

**Alter Ego Allegations**

### Complete Domination and Control

34.     Defendants Discover, SAM Panama, SAM Switzerland, and SAM Eagle have so blurred the lines between purportedly separate existences that they should

9

be treated as alter ego entities.  The same is all the more so given that Defendants have abused the corporate form in order to perpetrate a fraud, injustice or other wrongdoing.

35.     On information and belief, each of the Defendants share overlapping ownership.  The grounds for such information and belief include the following:

    a. The Time Charter Recap for the ex-NIKA, identified its owner as being Discover Investment Corp and its commercial managers as being SAM Shipping Management S.A. of Panama City, Panama (ie., SAM Panama).  It went on, following various other provisions, to state that it was "OWISE [otherwise] AS PER OWNS [owners] ATTACHED CP, LOGICALLY AMENDED AS PER MAIN TEMRS [sic] AGREED AND WITH FOLL ALTERATIONS".

    b. Thereafter, following the mis-delivery and when Discover's attorneys forwarded a set of attachments which they / Discover *contended* were "a complete (redacted) copy of the Recap and the Pro Forma terms that were attached thereto", the purported attachments were: (i) a March 4, 2013 NYPE form time charter for the SAM HAWK which began by stating that that charter was made by "*Shipping Asset Management (SAM) Geneva as Commercial Managers SPV Sam Hawk Inc., Panama.*"  The forwarded (purported) attachments to the Time Charter Recap proceeded to include "ADDITIONAL CLAUSES

TO M.V. 'SAM LION' CHARTER PARTY DATED 1ST AUGUST 2013".

c. Therefore, when forwarding those *purported* attachments (as to which all of Plaintiff's rights are fully reserved) to the Time Charter Recap (concerning the ex-NIKA registered to Discover), Discover, through its representatives, effectively took the position (ie., admitted) that the *owners* of the ex-NIKA were the same as the owners of the SAM HAWK and SAM LION.

d. Further, the fact that it was SAM Geneva which entered into the March 4, 2013 time charter for the SAM HAWK (albeit as the commercial manager for that vessel's registered owner), underscores that SAM Geneva exercises complete control (as well as ultimate ownership) over the vessels, and vessel owning entities, within its fleet and its group.

e. Therefore, at the time of the voyage carrying the Relevant Cargo, SAM Geneva was, on information and belief, the ultimate owner of the ex-NIKA.

f. Additionally, the maritime database Equasis lists "Shipping Asset Management SAM" as having been the commercial manager of the ex-NIKA at the material time. That name corresponds more closely to that of SAM Geneva, rather than with that of SAM Panama. This, along with another online shipping database (WSDOnline)'s

listing of Discover as having the same telephone and facsimile number in Geneva as used by SAM Geneva, supports that there is not any true distinction between SAM Geneva and SAM Panama.

g.  Similar considerations also support that SAM Eagle is ultimately owned by SAM Geneva.  In that regard, Equasis lists "Shipping Asset Management SAM", with an address in Geneva, as the commercial manager for the SAM Eagle.

36.  On information and belief, the Defendants also share overlapping personnel charged with day-to-day operations, as well as overlapping persons amounting to actual or de facto officers.  That is so because, for the reasons set forth above, information available from Equasis supports that all commercial decisions are made by SAM Geneva.  The actual function of SAM Panama (referenced in the Time Charter Recap as "SAM Shipping Management S.A.") in this structure remains unclear.  But, again, Equasis identifies "Shipping Asset Management SAM" as: (a) being the commercial managers for SAM Eagle; and (b) having been the commercial managers for Discover.

a.  Additionally, SPV SAM Tiger Inc. (the former owner of the ex-NIKA, ex-TIGER), as well as SAM Eagle and multiple other, "SPV SAM" entities, share the same officers and directors in Panama (their place of incorporation), including Alvaro Barria, Heriberto Ortega, and Vielka Toribio de Urena.

12

37.     On information and belief, the Defendants, at least SAM Geneva, SAM Eagle and Discover, share (and/or shared at all material times) common office space and addresses.  The grounds for such information and belief include that Equasis identifies the address for SAM Eagle as "Care of Shipping Asset Management (SAM) SA, rue Robert Ceard, 12, 1204 Geneva, Switzerland".  Additionally, given Equasis's identification of "Shipping Asset Management SAM" as the commercial manager for that single vessel owning company, Plaintiff has good grounds to believe the same 'care of' address was used for Discover at the material times.

> a. That is particularly so given that, as aforesaid, the website WSDonline.com (ie., World Shipping Directory) identifies Discover's "Head Office" as being in Geneva, Switzerland, with a telephone number of +41 22 718 3388 and a facsimile number of +41 22 718 3380.

> b. Those telephone and facsimile numbers match the same as were once listed on SAM Geneva's own website as being its contact information.  (That website is apparently no longer accessible, a telltale sign of an organization endeavoring to minimize its profile to creditors.)

38.     Additionally, while SAM Geneva's website (sam-shipping.ch) is apparently no longer accessible, a cached copy of that website (notwithstanding a purported, small-font disclaimer which contended that "[a]ll vessels are commercially managed by Shipping Asset Management (SAM) SA. Ownership is

13

held by individual, independent single ship companies") listed its fleet as including the SAM EAGLE and the SAM TIGER (later renamed NIKA and thereafter NORD).

39.     On information and belief, neither SAM Eagle nor Discover exercises, or exercised, any independent discretion.  They are, and/or were, entirely controlled by their commercial manager and ultimate owner, SAM Geneva.  The grounds for that information and belief include that, pursuant to the purported attachments to the Time Charter Recap (as sent by Discover's attorneys and as to which all rights are reserved), SAM Geneva (as opposed to any supposedly distinct, single vessel owning companies) went so far as to enter charter parties, *as owner*, with respect to the vessels in its fleet.

40.     Additionally, SPV SAM Tiger Inc. (the former owner of the ex-NIKA, ex-TIGER), as well as SAM Eagle, plus SPV SAM Panther Inc, SPV SAM Falcon Inc., SPV SAM Lion Inc., SPV SAM Wolf Inc., SPV SAM Hawk Inc., and SPV SAM Jaguar Inc., were all, on information and belief, previously registered in Hong Kong as non-Hong Kong companies.  On information and belief, each of those entities' Hong Kong registrations ceased on the same date – February 9, 2018.  Such contemporaneous cessation is striking – if the entities were actually separate.

41.     On information and belief, there has also been overlap relating to financing arrangements pertaining to the vessels in SAM Geneva's fleet.  For example, a deed, dated December 18, 2015, released charges which had been given by various single vessel owning companies with respect to: a facility to finance acquisition of the SAM EAGLE and the SAM FALCON; a facility to finance

acquisition of the SAM Jaguar; and a facility to finance acquisition of the ex-SAM TIGER (ex-NIKA, now NORD). At a minimum, this supports that the concerned vessels, and their registered owners, all shared common ultimate ownership because the same instrument was used to release all of those charges. (Discovery would be needed to determine the extent of further, financial overlap such as cross-mortgaging [as was apparently done with respect to the SAM EAGLE and SAM Falcon] and/or any shared accounts for hire or freight payments.)

42.     Further evidencing that Discover and SAM Eagle (as well as the vessels respectively registered to those defendants) fell under the ultimate ownership of SAM Geneva is the fact that both the NIKA and the SAM EAGLE had "SAM SHIPPING" prominently emblazoned on their hulls.

**Abuse of the Corporate Form**

43.     On information and belief, the ex-NIKA's sale and name change (on or about June 24, 2019 and merely days after the Standstill Agreement's grace period had run, amounted to a sham transaction such that the ex-NIKA (now NORD) remained in the ultimate control of SAM Geneva and such changes were only undertaken to frustrate the interests and rights of Plaintiff as a creditor.

44.     Plaintiff's information and belief is based on multiple grounds, including that:

a. Lloyd's List Intelligence continued, after June 26, 2019 and while noting that the registered ownership of the ex-NIKA had changed to Anchor Nautical, to assess that SAM Asset Management (SAM) S.A.

continued to be the vessel's beneficial owner and commercial operator;

b. On information and belief, the ex-NIKA was not circulated in the market as being available for sale as would ordinarily be in the interests of owners to do if looking for a highest-price bid on an open market;

c. On information and belief, the ex-NIKA's trading pattern remains consistent with its pre-sale trading pattern;

d. The ex-NIKA's P&I Club also remains the same as its pre-sale P&I Club and is the same as other vessels in the SAM fleet.

e. The ex-NIKA's flag also remains the same as its pre-sale flag.

f. Discover is (or was) a single vessel owning company which sold its single asset, despite the pendency of claims concerning a very substantial sum of money.  That, on its own, raises considerations relating to fraudulent transfers, as to which all rights are reserved by Plaintiff.

g. Discover would have been in breach of the Standstill Agreement if it had taken steps during the grace period to sell the Vessel, including entering into an agreement to sell the Vessel. A transfer of the Vessel reportedly occurred about 3 days after the grace period ended under the Standstill Agreement. The clear inference here is that

16

Discover had taken steps during the grace period to sell the Vessel, putting it squarely in breach of the Standstill Agreement.

## Rule B Allegations

### Defendants cannot be found within this District

45.     After a diligent search, and as is further set forth in the accompanying Declaration of Andrew R. Nash that the Defendants Cannot be Found with the District, Plaintiff respectfully submits that neither Discover, nor SAM Eagle, nor SAM Panama, nor SAM Geneva can be found within this District for purposes of Supplemental Rule B.

46.     Diligent searches of the website maintained by the Texas Secretary of State, of the internet Whitepages directory, and a general internet search via Google did not identified any of the Defendants as:

> a.  Ever being registered or authorized to transact business in the State of Texas;
>
> b.  Being incorporated or registered in the State of Texas;
>
> c.  Having appointed an agent for service of process in this District; or
>
> d.  Having any other presence in this District.

47.     Further, Plaintiff is unaware of any of the Defendants having any general or managing agents in this District.

48.     Accordingly, Defendants cannot be "found" within this District for the purpose of an attachment pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims, and Plaintiff seeks an Order of Attachment against

such property, tangible or intangible, of the Defendants as may be found within the District, up to and including the full amount claimed herein (and subject to Plaintiff's reservation of all rights to adjust that amount as may become necessary and proper).

**Defendants' assets may be found within this District**

49.     On information and belief, Defendants have or soon will have property in this District consisting of the motor vessel SAM EAGLE (hereinafter, the "Vessel").

50.     On information and belief, the Vessel has an ETA of September 14, 2019 for a berth to-be-determined at the Port of Corpus Christi.

51.     The Vessel's registered owner is defendant SAM Eagle.  Further, for all of the aforesaid reasons, on information and belief, the SAM EAGLE's ultimate owner is SAM Geneva, and, SAM EAGLE and SAM Geneva are alter egos of one another just as Discover (and SAM Panama) are also alter egos of SAM Geneva and SAM Eagle.

52.     Accordingly, Plaintiff respectfully seeks to attach the Vessel pursuant to Supplemental Rule B.

## AS AND FOR A FIRST CAUSE OF ACTION – ATTACHMENT OF THE SAM EAGLE

53.     At all material times, Plaintiff was the lawful holder of the Relevant Bills of Lading, each of which constituted a maritime contract.

18

54.     By mis-delivering the cargo, Discover breached its maritime contractual obligations.

55.     For the reasons aforesaid, SAM Geneva, SAM Panama and SAM Eagle are Discover's alter egos and thereby liable for the same breached maritime obligations.

56.     Discover's breach caused Plaintiff to suffer damages in amount equal to, at least, $3,857,900 (for its principal claim), plus interest, attorney's fees and costs (which are recoverable under English law).   Plaintiff reasonably estimates that, during the pendency of the underlying dispute, interest equal to at least $462,948 will accrue, and attorney's fees and costs equal to at least $500,000 will accrue.

57.     Therefore, Plaintiff reasonably estimates its total, recoverable damages as being equal to, at least, $4,900,000.

58.     Plaintiff expressly reserves all of its rights to have the underlying merits of its claims resolved by arbitration in London.   Plaintiff brings this action to obtain quasi in rem jurisdiction over Defendants, and security for the enforcement of any resulting awards and/or judgments which it may obtain against any of the Defendants.

59.     None of the Defendants can be found within this District, but their property (namely the Vessel) may, or soon will be, found within this District.

60.     Plaintiff is accordingly entitled to attach Defendants' property (namely the Vessel) within this District.

## PRAYER FOR RELIEF

61.     On information and belief, Defendants have or will soon have property (namely the Vessel) in this District.

62.     Plaintiff seeks an Order from this Court directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure attaching any and all assets of Defendants up to the amount of **$4,900,000.00** for the purpose of obtaining personal jurisdiction over Defendants and to secure the claims being pursued in the London arbitration more fully described above.

**WHEREFORE**, Plaintiff prays:

(A) That process in due form of law issue against Defendants Discover Investment Corp., SAM Shipping Management S.A., Shipping Asset Management (SAM) S.A., and SPV SAM Eagle Inc. citing them to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

(B) That since Defendants cannot be found within this District pursuant to Rule B, this Court issue an Order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all property, tangible or intangible, in whatever form, in the amount of **$4,900,000.00** to established personal jurisdiction over the Defendants and to secure Plaintiff's underlying claims, and that all persons claiming any interest in the same be cited to appear and, pursuant to Supplemental Rules B and E, answer the matters alleged in the Verified Complaint;

PD.26980218.1

(C) That this Court retain jurisdiction over this matter through the entry of any judgment or recognizing, confirming or enforcing any award or judgment associated with claims currently pending, or which may be asserted in the future, as against any of the Defendants and in favor of Plaintiff; and

(D) That Plaintiff may have such other, further and different relief as the Court may deem just and proper in law and equity.

Respectfully submitted,

*/s/ Ivan M. Rodriguez*
Ivan M. Rodriguez
Texas Bar No. 24058977
Fed ID. 4566982
ivan.rodriguez@phelps.com
Andrew R. Nash
Texas Bar No. 24083550
Fed ID: 1690806
andy.nash@phelps.com
**Phelps Dunbar LLP**
500 Dallas Street, Suite 1300
Houston, Texas 77002
Telephone: (713) 626-1386
Telecopier: (713) 626-1388
**ATTORNEYS FOR PLAINTIFF,
FIMBANK PLC**

OF COUNSEL:
**Floyd Zadkovich (US) LLP**
Edward W. Floyd
ed.floyd@floydzad.com
Telephone: (917) 999 - 6914
215 Park Ave. South, 11th Floor
New York, New York 10003
*\*Application for Pro Hac Vice admission pending*

21

## VERIFICATION
## DECLARATION OF AVV. ANDREA BATELLI

Pursuant to 28 U.S.C. § 1746, this Declaration is executed by Avv. Andrea Batelli, the Group General Counsel for Plaintiff, FIMBANK PLC:

I, Avv. Andrea Batelli, declare under penalty of perjury:

1.     I am the Group General Counsel for Plaintiff, FIMBANK PLC and am duly authorized to make this Declaration on Plaintiff's behalf.

2.     I have read the foregoing Verified Complaint and know the contents therefore and that the same are true to my own knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

3.     The source of my information is documents, records, and other information reviewed by me, together with my knowledge and experience regarding the matters addressed by the Verified Complaint.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed:       September 13, 2019
                Malta

                                        _____
                                        Avv. Andrea Batelli