IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT
OF TEXAS CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| FIMBANK PLC | § | |
| | § | CAUSE NO. 2:19-CV-00264 |
| v. | § | |
| | § | |
| DISCOVER INVESTMENT CORP; | § | ADMIRALTY RULE 9(h) |
| SAM SHIPPING MANAGEMENT | § | |
| S.A.; SHIPPING ASSET | § | |
| MANAGEMENT (SAM) S.A.; and | § | |
| SPV SAM EAGLE INC. | § | |

## MOTION TO VACATE ATTACHMENT and MOTION TO DISMISS

SPV SAM Eagle Inc. ("SAM Eagle") files this restricted appearance pursuant to Rule E(8) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions to the Federal Rules of Civil Procedure ("Supplemental Admiralty Rules"), expressly restricting its appearance as registered owner of the *M/V SAM EAGLE* to defense of the claim asserted by process of maritime attachment of the *M/V SAM EAGLE*.  Pursuant to Rule E(8), this appearance is not for any other purpose or for any other claims, and SAM Eagle reserves all its rights and defenses, including its defenses under Federal Rule of Civil Procedure 12(b)(1) to 12(b)(6).

Subject to its restricted appearance under Rule E(8), SAM Eagle files this Motion to Vacate Attachment and Motion to Dismiss pursuant to Supplemental Admiralty Rule E(4)(f) to vacate the attachment of the *M/V SAM EAGLE* and to dismiss pursuant to Fed. R. Civ P. 12(b)(6) and 12(c), showing as follows:

### I.      SUMMARY OF THE ARGUMENT

The purposefully vague Verified Complaint of Plaintiff, FIMBANK PLC ("FIMBANK"), fails to allege a maritime claim, and therefore Rule B maritime attachment is not available.  The Complaint asserts contorted corporate veil piercing allegations in an attempt

to attach the *M/V SAM Eagle* for an alleged claim that a different vessel, the *M/V NIKA*, made a mis-delivery of cargo.  In actuality, FIMBANK has asserted a claim arising out of a failed trade finance deal with AOS Trading DMCC and AOS International SA ("collectively "AOS"), and that is not a maritime claim within admiralty jurisdiction.  Since Plaintiff has failed to assert a valid maritime claim, the attachment of the third-party vessel, *M/V SAM EAGLE*, must be vacated.  *Alphamate Commodity GMBH v. CHS Europe SA*, 627 F.3d 183 (2010).

FIMBANK and AOS were parties to a credit facility under which AOS borrowed funds to buy grain.  In turn, AOS sold the grain to third-parties.  It appears that AOS never paid back FIMBANK.  The subject grain was allegedly carried aboard the *M/V NIKA*, which was owned by Discover Investment Corp. ("Discover").  Discover is a separate and distinct entity from SPV SAM Eagle, Inc.   Simply put, the *M/V SAM EAGLE* and SPV SAM Eagle, Inc. had no involvement with the underlying grain sale or credit facility transactions.

FIMBANK's Complaint rests on an untenable claim that AOS's grain cargo was mis-delivered.  Paragraph 17 of the Complaint asserts that "It is Plaintiff's position that the Relevant Cargo was mis-delivered by the ex-NIKA," but Plaintiff asserts no facts to support this bald, conclusory position.   FIMBANK has failed to allege sufficient facts to support a legally cognizable claim for mis-delivery.

Plaintiff has also failed to assert that the attachment is predicated upon a valid arbitration agreement.   Plaintiff asserts that the claims arising out the carriage of the cargo on the *NIKA* are subject to London arbitration.   Verified Complaint at ¶ 26.  While the Federal Arbitration Act ("FAA") permits a Rule B attachment in support of a maritime arbitration, 9 U.S..C. § 8, Plaintiff must initially establish that a valid arbitration agreement exists.   As a third-party, SPV SAM Eagle Inc. cannot be bound by any arbitration agreement between Plaintiff and Discover. *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347 (5th Cir. 2003).

2

Plaintiff's alter ego allegations are not based on fact.  Plaintiff alleges that Discover Investment Corp. ("Discover" - the former owner of the *NIKA*), was the alter ego of Shipping Asset Management (SAM) S.A. ("SAM Geneva") at the time of the alleged mis-delivery. Plaintiff then alleges that SPV SAM Eagle Inc. ("SAM Eagle" – the owner of the attached *SAM EAGLE*), also was the alter ego of SAM Geneva at the time of the alleged mis-delivery. Unfortunately for Plaintiff, there are no facts to support these allegations.  Why, therefore, does Plaintiff make these allegations?  Because it is the only way it can attempt to justify the arrest of the *SAM EAGLE*.  In other words, for Plaintiff to attach the *SAM EAGLE* – a vessel that had no connection to the alleged mis-delivery – it must allege that SAM Geneva exercised complete control over both Discover and SAM Eagle at the time of the alleged mis-delivery, for the purpose of perpetrating a fraud.  Plaintiff fails in this effort.

Plaintiff has not alleged facts that show SAM Geneva completely controlled Discover in order to perpetrate a fraud.  Likewise, Plaintiff has not alleged facts that show SAM Geneva completely controlled SAM Eagle in order to perpetrate a fraud.  This is because no such facts exist. Rather, Plaintiff, "on information and belief," foists maritime industry website tid-bits to insinuate that SAM Geneva is a mastermind who manipulated companies and vessels for the purpose of mis-delivering Plaintff's cargo.

At the heart of Plaintiff's Complaint is its dismay that the *NIKA* was sold.   If Plaintiff has a mis-delivery claims, Plaintiff would have been within its rights to arrest the *NIKA* since it was the vessel that allegedly  mis-delivered the cargo.  Instead, seeking security for its alleged claim, Plaintiff attached the *SAM EAGLE* and now tries to link it to the mis-delivery claim. Worse, Plaintiff conflates its allegations about sale of the *NIKA* with the mis-delivery of the cargo.  That is, Plaintiff attempts to use the sale of the vessel to smear SAM Geneva and imply that the *actual* dispute – the alleged mis-delivery – was fraudulent.  The instant case centers on the alleged mis-delivery of cargo carried on the *NIKA* and the alter ego facts, or lack thereof,

3

at that moment in time.  The sale of the *NIKA* more than a year after the alleged mis-delivery has nothing to do with Plaintiff's mis-delivery claim.

## II.     LAW AND ARGUMENT

### A.     PLAINTIFF HAS THE BURDEN TO SHOW WHY THE ATTACHMENT SHOULD NOT BE VACATED.

Plaintiff faces a heightened burden due to its attachment of the *M/V SAM EAGLE*. Under Rule E(4)(f) of the Supplemental Admiralty Rules, a person claiming an interest in attached property is entitled to a prompt hearing "at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted."  Thus, it is the Plaintiff's burden to show that the attachment should not be vacated.  In reviewing a Motion to Vacate, a court accepts all well-pled facts contained in the plaintiff's verified complaint as true.  *See Jakil, S.P.A. v. Agrimpex Co. Ltd.*, 08 CIV. 5613 (DC), 2009 WL 57479 (S.D.N.Y. Jan. 8, 2009).  However, "[t]he Plaintiff must demonstrate that 'reasonable grounds' exist for the attachment, and that all technical requirements for effective attachment have been met." *Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d 519, 527 (S.D.N.Y. 2006) The Court has stated that a Plaintiff must show the following in order to support the attachment of the vessel: "(1) the plaintiff has a valid *prima facie* admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the  attachment." *Naftomar Shipping & Trading Co. v. KMA Intern. S.A.,* CIV.A. V-11-2, 2011 WL 888951 (S.D. Tex. Mar. 10, 2011)

Plaintiff has failed to establish a valid *prima facie* admiralty claim. While the standard of Rule 8 and Rule 12 requires specific factual allegations to support a claim for relief, Rule E adds to this requirement such that it is possible to withstand review under Rule 12 but fail to provide the factual basis sufficient to withstand the scrutiny of Rule E.  *Vitol, S.A. v. Capri*

4

*Marine, Ltd.*, CIV.A. MJG-09-3430, 2011 WL 5577618 (D. Md. Aug. 22, 2011) ("[I]n the attachment context there is a heightened pleading requirement that is not applicable in the dismissal context.").

More than merely pleading the factual and legal cause of action to justify an attachment, a party seeking to withstand review under Rule E must show probable cause to maintain the arrest of a vessel at a post arrest hearing. *Naftomar Shipping & Trading Co. v. KMA Intern. S.A.*, CIV.A. V-11-2, 2011 WL 888951 (S.D. Tex. Mar. 10, 2011). In effect, the phrase "probable cause" and "reasonable grounds" mean the same thing. *Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 279 (S.D.N.Y. 2006) (quoting *Draper v. United States,* 358 U.S. 307, 311, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959)).

## B. PLAINTIFF HAS FAILED TO STATE A VALID MARTIME CLAIM FOR WHICH RELIEF MAY BE GRANTED.

### 1. Rule 12(b)(6) Standard of Review

Federal Rules of Civil Procedure 8 and 12(b)(6), in conjunction, are a vehicle used to test the legal sufficiency of a complaint. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam). The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S. Ct. 1955, 1960, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009). It is clear that the complaint must contain facts, not conclusory allegations. *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").

Under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the complaint must allege facts that give rise to more than a possibility of a cause of action; a complaint must allege sufficient facts to cross "the line between possibility and plausibility of entitle[ment] to relief." Based on the standards delineated in *Twombly* and *Iqbal*, Plaintiff has not pled sufficient facts to support a valid maritime claim to support a Rule B attachment and further has failed to assert a plausible alter ego claim.

**2.     Plaintiff does not have a valid prima facie admiralty claim for mis-delivery.**

For the underlying attachment to be valid, FIMBANK must have a valid maritime claim against SPV SAM Eagle Inc. whose property, the *M/V SAM Eagle*, is the subject of the attachment order. In actuality, the issue before the Court is a claim by FIMBANK against AOS for failing to perform under the applicable credit facility. A dispute between the bank and a grain trader does not create a valid maritime claim, which obviates the basis for the attachment. *Alphamate Commodity GMBH v. CHS Europe SA*, 627 F.3d 183 (5th Cir. 2010) (attachment of a cargo of corn under Rule B was properly vacated as a dispute between commodities traders did not constitute a maritime claim).

An ocean carrier has a duty to properly deliver cargo. The *SAM EAGLE*, however, did not carry the subject grain. It is axiomatic that a Rule B attachment must be based on the existence of a valid maritime claim. FIMBANK has asserted mis-delivery in an attempt to generate a maritime claim. The following conclusory and contradictory allegations in the Verified Petition go to the mis-delivery claim:

9.     In 2018, Plaintiff provided banking facilities to non-parties AOS Trading DMCC and AOS International SA (collectively, "AOS") to finance the purchase of presold grains and feed by AOS for shipment to Egypt. Before advancing the money, Plaintiff would require as security either the original documents of title or (if copy documents of title were provided) an undertaking from the holder to provide original documents upon receiving payment. The title documents would then be held as security to secure the advance made by Plaintiff to finance the transaction.

11.     As indicated above, the Financed Cargo was to be, and was carried by the ex-NIKA, and, at that time, Discover was the ex-NIKA's registered owner.

12.     On or about April 5, 2018, non-party Credit Suisse (Switzerland) Ltd. sent to the Plaintiff 61 sets of "Bill of Lading (Originals) nrs. 1 to 61" with respect to the Financed Cargo. On April 13, 2018, Plaintiff remitted the sum of $10,593,156 to Credit Suisse (on behalf of AOS) in respect of the Financed Cargo. Plaintiff thus received and held the said bills of lading as security for the advance it made for purchase of the Financed Cargo.

13.     The NIKA carried the Financed Cargo to Egypt where it was discharged at Alexandria.

14.     Plaintiff sent complete sets of the bills of lading to AOS's various buyers, and/or their financial institutions, for collection by and on behalf of AOS.

- ***FIMBANK therefore released the applicable bills of lading to AOS and waived its security interest.***

17.     It is Plaintiffs' position that the Relevant Cargo was mis-delivered by the ex-NIKA such that, amongst others, Discover is liable for Plaintiff's loss.

- ***The allegation set forth in Paragraph 17 is a legal conclusion and not a factual allegation.***

18.     The Relevant Bills of Lading were dated March 22, 2018 and consigned to order. They name Inerco Trade S.A. of Switzerland, as shipper, and AOS Trading and Shipping, as notify party. They all state that they were issued by Odessa Maritime Agency "Interbroker" as agent on behalf of the Master of the ex-NIKA (for which Discover was the registered owner at the time when the bills were issued).

- ***FIMBANK has alleged no facts concerning the delivery of the cargo carried on the NIKA or to support the contention that the cargo was actually mis-delivered.***

53.     At all material times, Plaintiff was the lawful holder of the Relevant Bills of Lading, each of which constituted a maritime contract.

In Complaint paragraphs 15 and 16, FIMBANK says it was informed by June 12, 2018 that all the cargo had been collected from the warehouse, and then later the Blom Bank Egypt sent some bills of lading back to FIMBANK.  At that time, FIMBANK already knew the cargo had been discharged, delivered, and collected by cargo receivers.

- ***Therefore, FIMBANK cannot be an innocent, good faith, lawful, bona fide holder of the bills of lading expecting the Nika or Discover to deliver any cargo to FIMBANK.***

According to Plaintiff's allegations, Credit Suisse prepared the bills of lading and then sent the bills of lading to FIMBANK.  FIMBANK then negotiated the bills of lading to AOS and/or AOS's customers.   FIMBANK does not allege that it was either the Shipper or Consignee under any applicable bill of lading.   Nor does FIMBAKNK assert that it was the NIKA's charterer, which is significant because FIMBANK alleges that the bills of lading incorporate the NIKA's charter party.

Significantly, there are no facts alleged as to the specific circumstances alleged to the mis-delivery.  Rather, FIMBANK's only allegation concerning the actual delivery of the subject cargo is that FIMBANK"s lawyer in Malta wrote a letter to the *NIKA's* owner, Discover, stating it was the lawyer's subjective understanding that the cargo was mis-delivered.   Verified Complaint at ¶ 20.

The court in *Chilewich Partners v. M.V. Alligator Fortune,* 853 F.Supp. 744 (S.D.N.Y. 1994), rejected a similar claim asserted by a holder of a bill of lading who claimed mis-delivery against the ocean carrier who had released the cargo without presentation of the original bills of lading.   To reach its conclusion, the *Chilewich Partners* court analysed the Pomerene Act (49 U.S.C. §§  80101 *et seq.*) and held that "delivery" is justified when:

> A carrier is justified ... in delivering goods to one who is—(a) A person lawfully entitled to the possession of the goods, or (b) The consignee named in a straight bill for the goods, or (c) A person in possession of an order bill for the goods, by the terms of which the goods are deliverable  to his order; or which has been indorsed to him, or in blank by the  consignee; or by the mediate or immediate indorsee of the consignee.

The Court stated further that the "Act clearly contemplates the situation in which a party, not in possession of an order bill for the goods, is yet 'lawfully entitled to possession of the goods.' While the precise meaning of this phrase is elusive, the court concludes that delivery of the goods to a party at the direction of the holder of an order bill, and with whom the holder of the bill has contracted for delivery prior to surrender of the bill is delivery to a party "lawfully

entitled to possession of the goods." *Id*. at 753.

In short, FIMBANK has not asserted it was the Shipper or Consignee under the applicable bills of lading. FIMBANK has failed to assert that it was a party to the *NIKA's* charter. FIMBANK has not alleged any facts that Discover failed to deliver the cargo to a party who was not lawfully entitled to take possession of the cargo. FIMBANK's position is further undercut by the fact that FIMBANK released the bills of lading to AOS prior to the discharge of the cargo. Apart from the subject belief of FIMBANK's counsel, there are no facts to support a mis-delivery claim. As such, there is not a valid maritime claim upon which the Rule B attachment may be based.

### B.   PLAINTIFF'S ALTER EGO ALLEGATIONS ARE LEGALLY DEFECTIVE.

Generalized veil piercing allegations are insufficient as a matter of law. To support a claim for alter ego the Plaintiff must present specific factual allegations showing "(1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 359 (5th Cir. 2003). "The alter ego doctrine and piercing of the corporate veil are truly exceptional doctrines, reserved for those cases where the officers, directors or stockholders utilized the corporate entity as a sham to perpetuate a fraud, to shun personal liability, or to encompass other truly unique situations." *Jo Tankers v. HBG Logistics, LLC*, 11-CV-00938, 2013 WL 104827 (S.D. Texas. January 8, 2013) (citing *Subway Equip. Leasing Corp. v. Sims (Matter of Sims)*, 994 F.2d 210, 218 (5th Cir.1993)).

Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Torch Liquidating Trust ex rel. Bridge Associations, L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Circ. 2009) (quoting *Campbell v. City of San Antonio*, 43

F.3d 973, 975 (5th Cir. 1995).  Simply put, Plaintiff did not and cannot factually allege an

alter ego relationship between any of the named entities.

### 1.  Plaintiff cannot establish an alter ego exists.

Admiralty Courts have listed twelve factors that must be considered when determining

whether an alter ego relationship exists, analyzing each factor independently. *Sabine Towing*

*& Transportation Co. Inc. v. Merit Ventures, Inc*., 575 F.Supp. 1442 (E.D. Texas 1983).  These

factors, which are non-exhaustive, are as follows:

(1)     the parent and subsidiary have common stock ownership;
(2)     the parent and subsidiary have common directors or officers;
(3)     the parent and subsidiary have common business departments;
(4)     the parent and subsidiary file consolidated financial statements;
(5)     the parent finances the subsidiary;
(6)     the parent caused the incorporation of the subsidiary;
(7)     the subsidiary operated with grossly inadequate capital;
(8)     the parent pays salaries and other expenses of subsidiary;
(9)     the subsidiary receives no business except that given by the parent;
(10)    the parent uses the subsidiary's property as its own;
(11)    the daily operations of the two corporations are not kept separate;
(12)    the subsidiary does not observe corporate formalities.

*See also Oxford Capital Corp. v. U.S.*, 211 F.3d 280, 284 n.2 (5th Cir.2000) (listing same

factors for the test).

Plaintiff has alleged that Discover and SAM Eagle are the alter egos of SAM Geneva

for one reason – because: (1) Discover sold the *NIKA*, (2) FIMBANK thinks it has lost its

security, and (3) FIMBANK found convenient alternative security with the *SAM EAGLE* in

Corpus Christi.  To justify the attachment, FIMBANK has built a house of cards in an

attempt to portray SAM Geneva, a former vessel commercial manager, as a mastermind and

*owner* of both the *NIKA* and the *SAM EAGLE*.  SAM Geneva was not the owner of either

vessel, nor did it exercise complete control and domination over Discover and SAM Eagle

to perpetrate a fraud.

FIMBANK faces the challenge of proving alter ego from Discover up to SAM Geneva and then back down from SAM Geneva to SAM Eagle – at the time of the alleged mis-delivery.   FIMBANK has made numerous allegations in its Complaint and has stated a plethora of conclusory remarks based on its "information and belief," but it offers no facts that describe any of the *Sabine Towing* factors cited above that are considered when determining whether an alter ego relationship exists.   The sheer number of conclusory allegations set forth in the Complaint renders the alleged verification meaningless.

First, FIMBANK must allege facts that Discover and SAM Eagle were completely controlled by SAM Geneva for the purpose of committing a fraud.   Incredibly FIMBANK offers no such facts.   At best, FIMBANK suggests that the *NIKA* was owned by SAM Geneva based on a blurry amalgamation of information indicating SAM Geneva was the commercial manager for several vessels other than the *NIKA*.   That blurry allegation offers no evidence of SAM Geneva's complete control over Discover and SAM Eagle.   SAM Eagle addresses each of Plaintiff's allegations, found in Plaintiff's Complaint in paragraphs 34 through 42, as follows:

*Paragraph 34* – Plaintiff states in conclusory fashion that SAM Geneva, Discover, SAM Eagle and, for some inexplicable reason SAM Shipping Management S.A. (SAM Panama), "should be treated as alter ego entities" apparently solely because Plaintiff says so.  Plaintiff states no facts.  Similarly, Plaintiff alleges that these entities perpetrated a fraud, again without stating a single fact regarding a fraudulent *mis-delivery of the cargo* – which is at the root of this matter.

*Paragraph 3*5 – Plaintiff alleges that SAM Geneva, Discover and SAM Eagle share overlapping ownership and lists its grounds as follows:

a) The Time Charter Recap for the *NIKA* identified its owner as Discover and the commercial manager as SAM Panama.  These alleged facts do not show that Sam Geneva exercised complete control over Discover and SAM Eagle.

b) "Pro Forma" terms of the Recap included: (1) a March 4, 2013 NYPE form time charter for a vessel other than the *NIKA* (the *SAM HAWK*) which named SAM Geneva as that vessel's commercial manager, and (2) clauses related to a charter involving a vessel other than the *NIKA* (the *SAM LION*).  As is commonly known, pro forma means a matter of form/for the sake of form.  The *SAM HAWK* and *SAM LION* charter and clauses did no more than provide exemplars of standard terms and conditions to the parties to the *NIKA* charter.  It is ludicrous to allege that these fixture documents show that SAM Geneva completely controlled Discover and SAM Eagle when they show no such thing.  The documents merely show that SAM Geneva was a vessel commercial manager – *and not of the NIKA*.

c) Plaintiff alleges the Recap documents show that Discover – "through its representatives" – believes the same owner owns the *NIKA, SAM HAWK* and *SAM LION*.  Unstated is who these representatives are and who the common owner might be.  What is clear is that this bold allegation does not show that SAM Geneva completely controlled Discover and SAM Eagle.

d) Plaintiff alleges that SAM Geneva was the commercial manager of the *SAM HAWK* and, magically, this also makes it the vessel's owner and the owner of all SAM vessels.  No facts are alleged to support this fantastic allegation such as proof of ownership by SAM Geneva than can be obtained from information in the public domain.  Again, nothing here shows that SAM Geneva completely controlled Discover and SAM Geneva.

e) Plaintiff states in conclusory fashion that the allegations in paragraphs (a) through (d), and "on information and belief" show that SAM Geneva was the owner of the *NIKA*.

12

There are no facts to support this allegation.  SAM Geneva, a former vessel commercial manager, did not own the *NIKA* at the time of mis-delivery and FIMBANK knows this.

f) Plaintiff cites to information supposedly found in Equasis, a database that includes the names of vessels, owners, operators, insurers and the like, as factual proof that SAM Geneva rather than SAM Panama managed the *NIKA*.  What is proved is that Equasis inaccurately described SAM Panama.  Based on yet another database, Plaintiff alleges that Discover has the same phone and fax number as SAM Geneva.  First, even if SAM Geneva managed the *NIKA*, it does not show that it completely controlled Discover *or* SAM Eagle.  Second, that SAM Geneva and Discover may use the same phone and fax number similarly does not show SAM Geneva's complete control over Discover *and* SAM Eagle.

g) Plaintiff grossly mischaracterizes the role of a vessel manager as that of a vessel owner.  Plaintiff alleges that Equasis (again) indicates that SAM Geneva is the commercial manager for the *SAM EAGLE*.  Then Plaintiff leaps to the conclusion that, therefore, SAM Geneva is the vessel's owner and, apparently, also the owner of SAM Eagle.  Again, Plaintiff's offer nothing more than conjecture and supposition.  Lacking are any facts to show common stock ownership, common directors or officers, common business departments, consolidated financial statements, inadequate capital of a subsidiary, the failure to observe corporate formalities, etc. to support the allegation that SAM Geneva owned SAM Eagle.  Similarly, absent are facts that show that SAM Geneva owned the vessel, *M/V SAM EAGLE*.

*Paragraph 36* – Plaintiff again relies on an internet database, Equasis, to conclude that SAM Geneva makes "all commercial decisions" and, therefore, SAM Geneva, SAM Panama, SAM Eagle and Discover share overlapping officers and personnel.  This is a conclusion without any basis in logic or fact.  SAM Geneva is a former vessel commercial manager whose job was to manage vessels owned by separate corporate owners.  Nothing

about this common commercial arrangement shows or even suggests an alter ego relationship between SAM Geneva and any other entity.

a)  Plaintiff alleges that several vessel owning corporate entities, such as SPV SAM Tiger Inc. and SPV SAM Eagle Inc. (SAM Eagle) share the same officers and directors. This allegation does not show how SAM Geneva exercised complete control over Discover and SAM Eagle at the time of the mis-delivery.  These allegations say nothing at all about who the officers and directors of Discover or of SAM Geneva are, and Plaintiff presents no evidence of any overlap of officers and directors among SAM Eagle, Discover, and SAM Geneva.

*Paragraph 37* – Plaintiff, again, cites to an internet database to allege that SAM Eagle's address is "care of" SAM Geneva at SAM Geneva's address.  This allegation wholly supports the *separation* between these two corporate entities because SAM Geneva, as the former commercial manager of SAM Eagle's vessel, would naturally receive mail regarding the vessel.  This allegation does not show SAM Geneva's complete control of SAM Eagle or Discover at the time of the mis-delivery.

a,b)  Plaintiff alleges that yet another internet website, WSDonline.com, states that Discover's head office is in Geneva and shares the same phone and fax number as SAM Geneva.  Assuming *arguendo* this is a fact, this shows nothing more than that communications regarding the former commercial management of Discover's vessel by SAM Geneva flowed directly to SAM Geneva.  The allegation does not show overlapping officers and directors, for example, and certainly fails to show SAM Geneva's complete control over Discover at the time of the alleged mis-delivery.

*Paragraph 38* – Plaintiff alleges, in a round-about way, that SAM Geneva's former website states that SAM Geneva commercially managed the *SAM EAGLE* and the *SAM TIGER* and these vessels are owned by "individual, independent single ship companies."

This allegation supports the separation between a vessel commercial manager and the vessel owner.  The allegation does not show SAM Geneva's complete control over Discover and SAM Eagle at the time of the alleged mis-delivery.

*Paragraph 39* – Plaintiff alleges that, "on information and belief" SAM Geneva entered into charter parties "as owner with respect to vessels in its fleet."  Plaintiff carefully does not allege that SAM Geneva entered into charter parties, as owner, for the charter of the *NIKA* or *SAM EAGLE* at any point in time, much less at the time of the mis-delivery. The allegation in this paragraph that SAM Geneva entered into charter parties "as owner" says the grounds for this allegation are the Time Charter Recap attachments, but Paragrah 35(b) expressly refutes this ground.  Paragraph 35(b) says the Time Charter Recap attachments say that SAM Geneva entered into a prior charter of the *M/V SAM HAWK* "as Commercial Managers" (not "as owner").  Again, Plaintiff's allegation does not show that SAM Geneva exercised complete control over Discover and SAM Eagle at the time of the mis-delivery.

*Paragraph 40* – Plaintiff alleges that eight, single vessel owning companies ceased Hong Kong registration on the same date to suggest that the entities are not separate.  This allegation includes no facts to link these corporate decisions to SAM Geneva and constitutes no showing of its complete control over Discover and SAM Eagle at the time of the alleged mis-delivery.

*Paragraph 41* – Plaintiff alleges, "on information and belief" that there "has also been" overlap relating to financial arrangements pertaining to vessels commercially managed by SAM Geneva.  Plaintiff refers to a December 2015 deed which released finance charges associated with the purchase of four *SAM* vessels.  Firstly, this transaction transpired over two years *prior to* the alleged mis-delivery and is not relevant to SAM Geneva's alleged complete control over Discover and SAM Eagle at the time of the alleged mids-delivery.

Second, the transaction does no more than show a former vessel commercial manager commercially managing four *SAM* vessels.

*Paragraph 42* – Plaintiff alleges that, because vessels formerly commercially managed by SAM Geneva had "SAM SHIPPING" painted on the vessels' sides, this equates to SAM Geneva's ownership of the vessels.  This allegation makes no sense.

In summary, not a single one of Plaintiff's allegations amounts to a *prima facie* showing that SAM Geneva exercised complete control over Discover and SAM Eagle at the time of the alleged mis-delivery in May or June, 2018.  Not a single allegation amounts to "probable cause" that SAM Geneva exercised complete control.  Glaringly absent among Plaintiff's hodge-podge of internet-based assumptions are *facts* that satisfy any of the twelve alter ego factors discussed above.  Further, Plaintiff fails to present a single fact to show that SAM Geneva exercised complete control over Discover and SAM Geneva *to perpetrate a fraud* against Plaintiff in connection with the alleged mis-delivery of the cargo.

Stated candidly, no facts show that SAM Geneva: (1) completely controlled Discover and then ordered the *NIKA* to mis-deliver the cargo in May or June 2018 in furtherance of a fraud, and (2) simultaneously completely controlled SAM Eagle and ordered the SAM EAGLE to … commit *what* fraudulent act against Plaintiff in connection with the mis-delivery?

### 2. Plaintiff's Abuse of the Corporate Form Allegations are Irrelevant and Meritless.

Plaintiff fails to allege any specific factual allegations that the corporate veil was disregarded to commit the alleged wrong underlying this action.   Under the standards set forth in *Twombley* and *Iqbal*, "naked assertions" of wrongdoing necessitate some "factual enhancement" within the complaint to cross "the line between possibility and plausibility of entitlement to relief."  *Vitol S. A. v. Primerose Shipping Co. Ltd.* 708 F.3d 527, 543 (4th Cir.

2013) (bald allegations in the verified complaint failed to state viable claim based on the alter ego doctrine).

"While complete domination of the corporation is the key to piercing the corporate veil, … such domination, standing alone, is not enough; some showing of wrongful or unjust act toward [the party seeking piercing] is required." *Am. Fuel Corp. v. Utah Energy Dev. Co*., 122 F.3d 130, 134 (5th Cir. 2005).  Plaintiff has failed to present any factual allegations that the purported control "was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 359 (5th Cir.2003); see also *Dry Handy Investments Ltd. v. Corvina Shipping Co*., 988 F.Supp.2d 579, 584 (E.D. Va. 2013) (bare assertions could not establish a cognizable veil piercing claim).   Plaintiffs have failed to assert any facts to support the allegation that the corporate form should be disregarded due to a fraud or injustice committed at the time that the grain cargo was delivered in Egypt by the *NIKA* in May or June 2018.

Plaintiff alleges in paragraphs 43 through 44(a)-(g) that Discover's sale of the *NIKA over one year after* the alleged mis-delivery was fraudulent.  Assuming for the sake of argument that it was, it is not relevant to the alter ego claim based on an April/May 2018 cargo mis-delivery.  Nonetheless, SAM Eagle addresses Plaintiff's allegations as follows:

*Paragraph 43* – Plaintiff alleges that Discover's sale of the *NIKA* was a fraud committed by SAM Geneva to deprive Plaintiff of security for its mis-delivery claim.  First, if Plaintiff has a mis-delivery claim then, under U.S. general maritime law, it would have an *in rem* claim against the carrying vessel and therefore would have the legal right to arrest the *NIKA* (now *NORD*) at any time – which is what it should have done rather than attach the *SAM EAGLE*.  Second, Plaintiff states no facts to substantiate its claim and states only speculative conclusions based "on information and belief."  Third, Plaintiff states no facts that show SAM Geneva abused corporate form as regards *SAM Eagle*.

*Paragraph 44*

a) Plaintiff seemingly alleges that the ex-*NIKA's* new owners do not actually own the vessel, based on information from Lloyd's List Intelligence, another questionable source of hearsay.  No actual facts support this allegation.

b) Plaintiff alleges that the *NIKA* was not offered for sale in the market for such vessels – without a single fact to back it up.

c) Plaintiff alleges that the ex-*NIKA's* trading pattern has not changed since the sale of the vessel three months ago.  How this was determined and how a trading pattern can be discerned in three months is not explained with facts.

d,e) Plaintiff alleges that the vessel's insurer and flag remain unchanged without any explanation or facts how this amounts to fraud.

f) Plaintiff alleges that Discover's mere sale of its vessel constitutes a fraudulent transfer.  At the time of the sale, Discover had no legal duty to Plaintiff or anyone else to *not* sell the vessel.

g) Plaintiff alleges that Discover breached the Standstill Agreement by acting to sell the vessel during the Standstill Agreement.  Again, this is rank speculation without basis in fact.

In summary, Plaintiff alleges that Discover owned the *NIKA* and sold it *after* the Standstill Agreement expired.  Discover allegedly took these actions – not SAM Geneva – which completely undercuts Plaintiff's alter ego allegations.  Plaintiff makes conclusory allegations that Defendants used the corporate form to "perpetrate fraud and commit other injustice" without pointing to any specific facts supporting such allegations as it pertains to the underlying mis-delivery claim.  "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex. Rel. Thompson v. Colombia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).

FIMBANK, however, has utterly failed to set forth any facts to support this critical element of the corporate veil piercing test.

### D. Plaintiff's verification is legally defective and therefore cannot support a maritime attachment.

To obtain a maritime attachment, a plaintiff must file a verified complaint seeking attachment. Supplemental Admiralty Rule B(1)(a). To meet this mandatory requirement, FIMBANK submits the Declaration of Andrea Batelli, FIMBANK's general counsel (the "Batelli Declaration"), which is subject to the provisions of 28 U.S.C. § 1746. Because FIMBANK admits that the majority of the factual allegations set forth in the complaint *are not based on Batelli's personal knowledge*, the Batelli Declaration is legally defective. Accordingly, FIMBANK failed to meet its burden under Rule B(1)(a) to submit a properly verified complaint.

Under 28 U.S.C. § 1746, wherever, under any law of the United States, any matter is required or permitted to be supported or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, such matter may be supported by the unsworn verification, or statement, in writing of such person which is dated, subscribed by him, and true under penalty of perjury. An unsworn declaration may substitute for an affiant's oath if it is made "under penalty of perjury" and is "verified as true and correct.*" Nissho–Iwai American Corp. v. Kline,* 845 F.2d 1300, 1306 (5th Cir.1988) (citing 28 U.S.C. § 1746); *see also Washington v. Moore,* 990 F.2d 626, 626 (5th Cir.1993). Parties must strictly comply with the requirement of sworn statements. *See Gordon v. Watson*, 622 F.2d 120, 123 (1980); *see also Brady v. Blue Cross and Blue Shield of Texas, Inc.*, 767 F. Supp. 131, 135 (N.D.Tex.1991).

Statements in a verification that are not supported by personal knowledge are incompetent evidence and will not be considered by the court. *Metcalf v. Bay Ferries Limited,*

937 F. Supp2d 147, 149 (Dist. Mass 2013); *see also Garcia v. U Pull it Auto & Truck Salvage, Inc*., No. 3:14-cv-3655-BN, 2016 WL 427382, at *1 (N.D. Tex. Feb. 4, 2016) ("An affidavit or declaration, made under penalty of perjury pursuant to 28 U.S.C. § 1746, can adequately support a motion for summary judgment when it is made on personal knowledge and shows that the affiant or declarant is competent to testify on the matters stated).

As an initial matter, it begs credulity that a lawyer sitting in Malta would have any personal knowledge of the alleged mis-delivery of the *NIKA* cargo, which occurred in Egypt in 2018, or the alleged corporate relationship between the defendants. Recognizing that the Declarant lacks personal knowledge, Paragraph 2 of the Batelli Declaration states:

> I have read the foregoing Verified Complaint and know the contents therefore and that the same are true to my own knowledge, ***except as to matters therein stated to be alleged on information and belief***, and as to those matters I believe them to be true.

The Declarant therefore admits that the numerous paragraphs in the Complaint that are qualified by the phrase "alleged on information and belief" are <u>not</u> based on personal knowledge. The following paragraphs relevant to the veil piercing allegations are qualified by the phrase "upon information and belief" and ***therefore are not based on the Declarant's personal knowledge***:

| | |
|---|---|
| Paragraph 7 | **On information and belief,** at all material times . . . |
| Paragraph 8 | **On information and belief,** at all material times and for reasons further set forth below . . . |
| Paragraph 35 | **On information and belief,** |
| Paragraph 36 | **On information and belief** . . . |
| Paragraph 37 | **On information and belief** . . . |
| Paragraph 39 | **On information and belief** . . . |
| Paragraph 40 | **On information and belief** . . .. |
| Paragraph 41 | **On information and belief,** . . . |
| Paragraph 43 | **On information and belief** . . . |
| Paragraph 44 | Plaintiff's **information and belief…** |
| Paragraph 60 | Further, for all of the aforesaid reasons, **on information and belief,** . . . |

These paragraphs essentially cover all the allegations supporting the alter ego corporate veil piercing efforts. These allegations are not based on verified facts, and therefore they cannot support a Rule B attachment.

FIMBANK attempts to qualify the admission that the Declarant lacks personal knowledge as to the alleged facts cited above by stating the Declarant "believes them to be true." The Declarants' subjective belief is not relevant. The Batelli Declaration attempts to mask the fact that the overwhelming majority of the "facts" alleged in the Complaint are not based on the Declarant's personal knowledge and therefore not properly verified. *Diamond Offshore Co v. Survival Systems Intern. Inc*., 902 F.Supp.2d 912, 933 (S.D. Tex. 2012) (portions of affidavit based on statements made on information and belief were stricken). Accordingly, FIMBANK has not submitted a legally sufficient verification to support its application for a maritime attachment under Rule B. Therefore, the Court should vacate the attachment.

### III.   CONCLUSION

FIMBANK made a bad deal with AOS. As a result, FIMBANK obtained a $20,732,582.00 judgment against AOS in the courts of the UAE.[1] If FIMBANK has a mis-delivery claim, it can assert it against the ex-*NIKA*. FIMBANK does not have, however, a legally cognizable claim against the *M/V SAM EAGLE* or SPV SAM Eagle Inc. Notwithstanding the abundance of conclusory assertions, FIMBANK's claim does not set forth sufficient facts to support a claim for mis-delivery against SPV SAM Eagle, Inc., which was not involved with the grain carriage at issue. Apart from innuendo, FIMBANK has not plead sufficient facts to meet its heavy burden of proving the corporate form should be disregarded. Accordingly, this Court should vacate the attachment of the *SAM EAGLE*.

---

[1] https://www.difccourts.ae/2019/03/04/cfi-079-2018-fimbank-p-l-c-t-a-fimbank-plc-difc-branch-v-aos-trading-dmcc/

SPV Sam Eagle, Inc. prays the Court will grant this motion, vacate the attachment of the *M/V SAM EAGLE*, dismiss the Complaint, and grant such other relief as justice may require.

Respectfully submitted,

**HOLMAN FENWICK WILLAN USA LLP**

/s/ *Thomas R. Nork*
Michael J .Wray
TBN: 24052191
Michael.Wray@hfw.com
Thomas R. Nork
TBN: 15078500
Thomas.Nork@hfw.com
Christopher Hart
TBN: 09136310
Chris.hart@hfw.com
5151 San Felipe, Suite 400
Houston, Texas 77056
Telephone: (713) 917-0888
Facsimile: (713) 953-9470
**ATTORNEYS FOR DEFENDANT**
**SPV SAM EAGLE INC.**

## CERTIFICATE OF SERVICE

I certify that the foregoing instrument was electronically filed on September 26, 2019, and that a true and correct copy of the foregoing will be served on all counsel of record via the Electronic Case Filing System of the United States District Court for the Southern District of Texas.

/s/ **Thomas R. Nork**
Thomas R. Nork