IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| FIMBANK PLC | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:19-CV-264 |
| | § | |
| DISCOVER INVESTMENT CORP; | § | |
| SAM SHIPPING MANAGEMENT | § | ADMIRALTY RULE 9(h) |
| S.A.; SHIPPING ASSET | § | |
| MANAGEMENT (SAM) S.A.; and | § | |
| SPV SAM EAGLE INC. | § | |

**OPPOSED MOTION TO DETERMINE REPATRIATION AND CREW WAGES
AS *CUSTODIA LEGIS* EXPENSES AND MOTION FOR EXPEDITED HEARING**

TO THE UNITED STATES DISTRICT COURT JUDGE FOR THE
SOUTHERN DISTRICT OF TEXAS, CORPUS CHRISTI DIVISION:

NOW COMES **MELINDA MARITIME LTD.**, Party-in-Interest and Buyer of the vessel M/V SAM EAGLE, pursuant to the judicial sale of the Vessel ordered by this Court on June 2, 2020. Melinda Maritime Ltd. ("Melinda Maritime" or "Buyers") files this Opposed Motion to Determine Repatriation and Crew Wages as *Custodia Legis* Expenses and Motion for Expedited Hearing on same. Melinda Maritime hereby requests that this Honorable Court determine and order that the costs for repatriating the crew onboard the vessel M/V SAM EAGLE and the crew's outstanding wages, if any, be deemed *custodia legis* expenses. In support thereof, Melinda Maritime would show the Court as follows:

I.  **BACKGROUND AND ARGUMENT**

1. As this Court is undoubtedly aware, this matter stems from the Supplemental Admiralty Rule B attachment and subsequent judicial sale of the vessel M/V SAM EAGLE (the "Vessel"). Melinda Maritime was the highest bidder and subsequent purchaser of the Vessel,

pursuant to the "M/V SAM EAGLE Conditions of Sale."  *See* Dkt. Entry 152, and "Conditions of Sale," attached hereto as "**Exhibit A**."

2. Shortly after Melinda Maritime became the highest bidder and presumptive owner of the Vessel, it came to Melinda Maritime's attention that Credit Suisse had no intention to pay for the necessary repatriation of the crewmembers aboard the Vessel.  In fact, Credit Suisse appears to be taking the position that the payment for the repatriation of the crewmembers should be borne solely by Melinda Marine as purchasers of the Vessel.  This position is contrary both to the law of the United States and of the "Conditions of Sale."

3. Further, while Credit Suisse has indicated that it will pay for crewmember wages through the date of the final Bill of Sale, based upon information and belief, a portion of the wages remains outstanding as of the time of the filing of this pleading.  Melinda Marine is in receipt of an objection letter to the Philippine Overseas Employment Administration indicating that there are pending financial obligations relating to the M/V SAM EAGLE.  *See* "**Exhibit B**."

4. Repatriation expenses have long been held to be *custodia legis* expenses by various district courts within the Fifth Circuit.  *See Nevi Mar. Co., Inc. v. M/V ALEXANDER'S UNITY*, CIV. A. 92-2561, 1993 WL 386257, at *3 (E.D. La. Sept. 21, 1993); *Sunrise Shipping, Ltd. v. M/V Am. Chemist*, CIV. A. 96-2849, 1998 WL 57047, at *2 (E.D. La. Feb. 10, 1998); *Neptune Orient Lines, Ltd. v. Halla Merch. Marine Co., Ltd.*, CIV. A. 97-3828, 1998 WL 151433, at *3 (E.D. La. Mar. 24, 1998).  Further, it is immaterial whether the repatriation of the crewmembers takes place before or after the actual sale of the Vessel, as repatriation expenses attach during the arrest (here "attachment") period, despite the fact that these expenses may accrue upon confirmation of the sale and release of the Vessel.  *See Sunrise Shipping, Ltd. v. M/V Am. Chemist*, 1998 WL 57047 at *2; *Neptune Orient Lines, Ltd. v. Halla Merch. Marine Co., Ltd.*, 1998 WL 151433 at *3.

Consequently, the repatriation expenses to be incurred by Melinda Maritime shortly after the sale of the Vessel should be classified as *custodia legis* expenses based on the overwhelming legal authority.

5. Furthermore, there is no language in the "Conditions of Sale" that would require payment of the repatriation fees by the Buyer, Melinda Maritime. *See* "**Exhibit A.**" In fact, there is no mention of the payment of any expenses associated with the crewmembers contained in the "Conditions of Sale." *Id.* If it was the intent parties to the "Conditions of Sale" to place liability of the crew repatriation on the Buyer, the document must specifically mention such requirement. If such costs had been taken into account by Melinda Marine, the price of the repatriation would have directly affected the bid price. Quite simply, Melinda Marine did not purchase the crew or its liabilities, it purchased the Vessel.

6. In this regard, the "Conditions of Sale" expressly *excludes* 'repatriation' of existing crew as a cost to new buyers, for two reasons: (1) under Clause 2, the vessel was sold *"free and clear of all liens, claims, encumbrances and mortgages;'* and (2) under Clause 20, the risk and costs transfers to Buyers only from the date when full payment is made. *See* "**Exhibit A**," Clause 2 and Clause 20.

7. The "Conditions of Sale" are clear as to the risk transferred to the Buyer and when the risk transferred. Specifically, Clause 20 of the Conditions of Sale reads as follows:

> "The Vessel shall be at the successful bidder's risk from the time when the payment referred to in Clause 12 is made or becomes due, whichever is earlier, and from that time all expenses relating to the Vessel, including dock and other dues, shall be for the successful bidder's account."

*Id.,* Clause 20. As can be seen, the expenses associated with the Vessel shift to the Buyer only *after* the final purchase is completed. Once again, repatriation expenses attach during the arrest (here, "attachment") period, despite the fact that these expenses may eventually be required to be

actually disbursed upon confirmation of the sale and release of the vessel. *See Neptune Orient Lines, Ltd. v. Halla Merch. Marine Co., Ltd.*, at *3. Thus, it is clear that the repatriation expenses were intended under the "Conditions of Sale" to be borne by the attaching party and/or determined to be *custodia legis* expenses. Therefore, Melinda Maritime respectfully requests that this Court determine and order the crew's repatriation expenses as a *custodia legis* expense.

8. As to crewmember wages, it is unquestionable that the earning of a seaman's wages gives rise to a preferred maritime lien against the vessel and can be characterized as *custodia legis* expenses. *See Sunrise Shipping, Ltd. v. M/V Am. Chemist*, 1998 WL 57047 at *1. One who advances money to pay crew's wages is entitled to a maritime lien of the same rank. *International Paint Company, Inc. v. M/V Mission Viking*, 637 F.2d 382, 385 (5th Cir. 1981).

9. It is further submitted that, at the time of the filing of this Motion, Melinda Maritime has deposited the full purchase price of the Vessel with the Court, and the Court has with it the sales proceeds from which the expenses for crew repatriation and any remaining crew wages can be disbursed to the Vessel's local agent, Wilhelmsen Ship Service.

10. From all indications, Credit Suisse fully intends to pay for and maintain the crewmember's wages up to the time of the sale of the Vessel. However, to the extent that any crewmember's wages remain unpaid at the time of sale, and Credit Suisse does not make payment, Melinda Maritime respectfully requests that this Honorable Court determine and order the crewmember expenses as a *custodia legis* expenses.

## II.    EXPEDITED HEARING REQUEST

11. The Vessel is currently scheduled to depart the Port of Corpus Christi on or about July 28-29, 2020. Melinda Marine is in a situation where the determination of the nature of the repatriation fees as *custodia legis* expenses directly effects the scheduling, crewing, and departure

plans of the Vessel. Specifically, Melinda Marine desires to crew their newly purchased vessel with an experienced crew familiar to their company. The Vessel needs to undergo repairs prior to her next voyage and Melinda Marine believes the current crew would be ineffective for this purpose. Furthermore, as many of the current crewmembers have been onboard the Vessel for over one (1) year, Melinda Marine believes them to be unfit for another voyage overseas. However, Melinda Marine is effectively prevented from appointing its own crew to man the Vessel as the payment for the repatriation of the crew is being contested by Credit Suisse.

12. As the Vessel is scheduled to sail imminently, and the fact that determination of this Court as to the classification of repatriation expenses would directly affect the scheduling and voyage of the Vessel, in order to avoid irreparable harm, Melinda Marine respectfully requests that this Court set this Motion for an emergency hearing as soon as practicable on or before 5:00 p.m. on Monday, July 27, 2020. If a hearing cannot be held as requested above, then a hearing is requested as soon as possible in accordance with the Court's availability.

### III. PRAYER

WHEREFORE, PREMISES CONSIDERED, Melinda Maritime Ltd. respectfully requests that this Court, acting in equity and good conscience, recognize and determine crew wages and repatriation expenses as *custodia legis* expenses, to be calculated and submitted to the Court along with the other final *custodia legis* expenses upon confirmation of the sale of the Vessel, and that this Court set the present Motion for hearing as soon as practicable on an expedited basis, no later than 5:00p.m. on Monday, July 27, 2020. Melinda Maritime, Ltd. respectfully requests any and all such other and further relief to which it may show itself to be justly entitled.

[Signature Page Follows]

331313v2
33371.1

        Respectfully submitted,

    By:  */s/ Dabney W. Pettus*
        Dabney Welsh Pettus
        State Bar No. 24033443
        Federal ID No. 29959
        dpettus@welderleshin.com
        Marshall Swanson
        State Bar No. 24098490
        Federal ID No. 2801123
        mswanson@welderleshin.com

    **Attorneys-in-Charge for Melinda Maritime Ltd.**

OF COUNSEL:

WELDER LESHIN LLP
800 North Shoreline Blvd.
Suite 300, North Tower
Corpus Christi, Texas 78401
(361) 561-8000 – Telephone
(361) 561-8001 – Telefax

## CERTIFICATE OF CONFERENCE

I hereby certify that I have conferred with the following attorneys of record, and their position on the relief sought by way of this Motion is as follows:

1. Counsel for Plaintiff, FIMBank PLC:  Considered Opposed, as waiting instructions from client and cannot make a representation as to either opposed or unopposed.

2. Counsel for Plaintiff, Credit Suisse:  Opposed.

3. Counsel for Defendant, SPV SAM Eagle, Inc.:  Unopposed.

    */s/ Dabney W. Pettus*
    Dabney W. Pettus

331313v2
33371.1

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing pleading was forwarded to the following attorneys of record, in accordance with the Federal Rules of Civil Procedure, on this the 23rd day of July, 2020.

Michael J. Wray
Thomas R. Nork
Christopher Hart
HOLMAN FENWICH WILLAN USA LLP
5151 San Felipe, Suite 400
Houston, Texas 77056
Michael.wray@hfw.com
Tom.nork@hfw.com
Chris.hart@hfw.com
**Attorneys for Plaintiff, FIMBank PLC**

Keith B. Letourneau
Zachary R. Cain
BLANK ROME LLP
717 Texas Avenue, Suite 1400
Houston, Texas 77002
kletourneau@blankrome.com
zcain@blankrome.com
**Attorneys for Plaintiff, Credit Suisse**

Edward W. Floyd
Luke F. Zadkovich
Timothy S. McGovern
FLOYD ZADKOVICH (US) LLP
215 Park Ave South, 11th Floor
New York, New York 10003
ed.floyd@floydzad.com
luke.zadkovich@floydzad.com
tim.mcgovern@floydzad.com
**Attorneys for Defendant, SPV SAM Eagle, Inc.**

                                                    */s/ Dabney W. Pettus*
                                                    Dabney W. Pettus