UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| FIMBANK PLC, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:19-CV-00264 |
| | § | |
| DISCOVERY INVESTMENT CORP., *et al*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

# **ORDER**

Melinda Maritime ("Melinda") purchased the *M/V SAM Eagle* at a judicial auction on July 15, 2020. (*See* D.E. 152). On July 23, 2020, following the expiration of the period for objections, the sale was made final and the undersigned ordered the transfer of full and complete title in the vessel to Melinda. (D.E. 156 at 1). At the same time, the Order for Warrant of Arrest and Attachment was vacated and the vessel was released from arrest and attachment. (*Id.* at 2). Now pending is Melinda's "Motion to Determine Repatriation and Crew Wages as *Custodia Legis* Expenses," in which Melinda seeks a ruling that the crew repatriation fees and current crew's continuing wages are *custodia legis* expenses. (D.E. 158). Credit Suisse, one of the parties that sought the arrest and attachment of the vessel, opposes the motion, contending that these are expenses that arose after the completion of the sale that should be borne by Melinda. (D.E. 160). Because Melinda intends to sail as soon as possible and the current crew has been aboard the vessel for over a year, an expedited hearing was held on July 27, 2020. As announced

at the hearing and for the reasons discussed further below, the motion (D.E. 158) is DENIED.

"In the admiralty context, *custodia legis* expenses are the costs, fees, and expenses incurred by seizing a vessel. Common *custodia legis* expenses include dockage fees, maintenance costs, and necessary fuel and water to keep equipment operating while a vessel is under arrest." *Gulf Copper & Mfg. Corp. v. M/V LEWEK EXPRESS*, No. 3:19-CV-00034, 2019 WL 2435848 at *1 (S.D. Tex. June 11, 2019). In general, "services or property advanced to preserve and maintain the vessel under seizure, furnished upon authority of the court or of an officer of the court . . . acting within his authority, should be allowed as a *custodia legis* expense." *Gen. Elec. Credit & Leasing Corp. v. Drill Ship Mission Expl.*, 668 F.2d 811, 816 (5th Cir. 1982).

A maritime lien arises when the underlying debt arises. *Governor & Co. of Bank of Scotland v. Sabay*, 211 F.3d 261, 268 (5th Cir. 2000). Further, a "cause of action for a debt accrues when it becomes due." *Wilder Farms, Inc. v. Rural Cmty. Ins. Servs.*, No. 2-11-CV-00123-J, 2011 WL 6179578, at *5 (N.D. Tex. Dec. 12, 2011) (citing *Southern Surety Co. v. Austin*, 22 F.2d 881, 882 (5th Cir.1927)).

The conditions of sale applicable to the *M/V SAM Eagle* stated that the vessel was to be sold "as is where is" and "free and clear of all liens, claims, mortgages and encumbrances." (D.E. 158-1 at 1). Further, the conditions established that the "Vessel shall be at the successful bidder's risk from the time when the payment . . . is made or becomes due, whichever is earlier, and from that time all expenses relating to the Vessel, including dock and other dues, shall be for the successful bidder's account." (*Id.* at 3-4).

Here, under the Fifth Circuit's definition of *custodia legis* expenses, the costs of crew repatriation and wages after the sale was completed are not costs necessary to preserve and maintain the vessel under seizure. *Gen. Elec.*, 668 F.2d at 816. As of July 23, 2020, when the sale to Melinda was completed, the vessel is no longer under seizure. (D.E. 156 at 2). Thus, by definition, any expenses incurred from that date forward cannot be necessary to preserve and maintain the vessel under seizure. Further, under the conditions of sale, Melinda is responsible for "all expenses relating to the Vessel" from the time they made their payment to purchase the vessel. (D.E. 158-1 at 3-4). Although Melinda argues that they purchased only the vessel and not the crew, under the language of the conditions of sale, the crew expenses at issue here relate to the vessel and became due after the completion of the sale. There is no dispute that Melinda is not responsible for any of the crew expenses from before the completion of the sale.

Melinda relies on three cases from the Eastern District of Louisiana. *See Nevi Mar. Co. v. M/V ALEXANDER'S UNITY*, No. CIV. A. 92-2561, 1993 WL 386257 at *3 (E.D. La. Sept. 21, 1993) (stating that repatriation fees and crew wages can be *custodia legis* expenses); *Sunrise Shipping, Ltd. v. M/V Am. Chemist*, No. CIV. A. 96-2849, 1998 WL 57047 at *2 (E.D. La. Feb. 10, 1998) (stating that the responsibility for repatriation fees attaches during the arrest period); *Neptune Orient Lines, Ltd. v. Halla Merch. Marine Co.*, No. CIV. A. 97-3828, 1998 WL 151433, at *3 (E.D. La. Mar. 24, 1998) (citing *Sunrise Shipping* to reach the same conclusion). However, to the extent that *Sunrise Shipping* and *Neptune Orient* state that crew wages and repatriation fees that arise after the sale of a vessel actually attach before the sale and are properly considered

3

*custodia legis* expenses, they cite no authority and contradict the Fifth Circuit's definition of *custodia legis* expenses. *Nevi Maritime*, the case cited in *Sunrise Shipping* for the conclusion that repatriation fees can be *custodia legis* expenses, does not indicate whether the repatriation fees arose before or after any sale.

Accordingly, Melinda's motion (D.E. 158) is DENIED. The crew wages for the period after the completion of the sale and the crew repatriation fees are not custodial expenses.

ORDERED this 27th day of July, 2020.

_____
Julie K. Hampton
United States Magistrate Judge