United States District Court
Southern District of Texas
**ENTERED**
February 03, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| FIMBANK PLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:19-CV-00264 |
| | § | |
| DISCOVERY INVESTMENT CORP., *et al*, | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Now pending is Plaintiff Credit Suisse AG's ("Credit Suisse") motion for entry of default and default judgment against SPV SAM Eagle Inc. ("SAM Eagle") *in personam* and the *M/V SAM Eagle in rem* (D.E. 197). For the reasons discussed further below, it is recommended that the motion be GRANTED and final judgment be entered for Credit Suisse.

### I.   BACKGROUND

On April 6, 2020, Credit Suisse served SAM Eagle and the *M/V SAM Eagle* via service of the summons and complaint on the master of the *M/V SAM Eagle*. (Case No. 4:20-cv-01158,[1] D.E. 12, 13); Fed. R. Civ. P. 4(h). Each summons explained the consequences of not answering within 21 days. (Case No. 4:20-cv-01158, D.E. 8, 9). Although SAM Eagle had previously entered a restricted appearance in connection with

---

[1] Case 4:20-cv-01158 was later consolidated with the present case. (D.E. 129).

FIMBANK PLC's attachment of the *M/V SAM Eagle*, it did not answer Credit Suisse's complaint in either its *in personam* capacity or as a claimant to the *M/V SAM Eagle*. (*See* D.E. 17).

On July 15, 2020, the *M/V SAM Eagle* was sold pursuant to this Court's order, and proceeds totaling $4,743,777 were deposited into the Court's registry. (D.E. 156).

On July 27, 2020, SAM Eagle moved to dismiss its counterclaim against FIMBANK and indicated that "it no longer wishe[d] to participate in these proceedings or to pursue any action in this case" and "it makes no claim to ownership of the proceeds of the sale of the vessel." (D.E. 161 at 1-2). The motion was granted. (D.E. 185). SAM Eagle has not filed anything since that date.

Credit Suisse served its motion for default judgment on SAM Eagle after seeking and obtaining leave for alternative service. (D.E. 196, 198, 200). SAM Eagle has not responded to the motion.

Credit Suisse and the purchaser of the vessel, Melinda Maritime, LLC, reached an agreement that Melinda should receive $60,000 to cover certain *custodia legis* expenses. (D.E. 202). The Court ordered as such and those funds have been released to Melinda Maritime. (D.E. 204). Further, FIMBANK has voluntarily dismissed its claims against SAM Eagle and the *M/V SAM Eagle* in this case. (D.E. 205). Only Credit Suisse remains as a claimant.

## II.   DISCUSSION

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk

2

must enter the party's default. Fed. R. Civ. P. 55(a). A party may apply for the court to enter a default judgment, and the court may conduct hearings when, to effectuate judgment, it needs to: (a) conduct an accounting; (b) determine the amount of damages; (c) establish the truth of any allegation by evidence; or (d) investigate any other matter. Fed. R. Civ. P. 55(b)(2).

A maritime lien is a "special property right in a ship given to a creditor by law as security for a debt or claim subsisting from the moment the debt arises…" *Galehead, Inc. v. M/V Anglia*, 183 F.3d 1242, 1247 (11th Cir. 1999). Once competing liens have been ranked according to class, the top priority liens are paid first, and if the funds are insufficient to pay a particular ranked class in full, the available funds are distributed among claimants in that class according to rules operating within that class. *United States v. One (1) 254 Ft. Freighter, M/V Andoria*, 570 F. Supp. 413, 415 (E.D. La. 1983), aff'd, 768 F.2d 597 (5th Cir. 1985).

*Custodia legis* costs are those expenses "of maintaining and preserving the vessel while it was within the custody of the court." *Gen. Elec. Credit & Leasing Corp. v. Drill Ship Mission Expl.*, 668 F.2d 811, 813 (5th Cir. 1982). Common *custodia legis* expenses include dockage fees, maintenance costs, and necessary fuel and water to keep equipment operating while a vessel is under arrest. *See Gulf Copper & Mfg. Corp. v. M/V LEWEK EXPRESS*, No. 3:19-CV-00034, 2019 WL 2435848, at *1 (S.D. Tex. June 11, 2019). An expenditure that inures to the benefit of all claimants can legitimately be claimed as an administrative expense. *New York Dock Co. v. Steamship Poznan*, 274 U.S. 117, 120-21 (1927).

3

Here, SAM Eagle's failure to answer or otherwise appear within the time required by the Federal Rules of Civil Procedure places it in default. Fed. R. Civ. P. 55(a). After reviewing the allegations in the complaint and the evidence submitted with Credit Suisse's present motion for entry of default and default judgment, it appears that the entry of default judgment is warranted.

Credit Suisse has submitted evidence that it is entitled to recover a total of $7,835,755.10 against SAM Eagle and the *M/V SAM Eagle*, consisting of:

- $6,398,809.95 in connection with a preferred ship mortgage and related loan agreement. (D.E. 197-4, 197-5, 197-6, 197-7).
- $1,436,945.15 in *custodia legis* expenses related to the vessel's arrest. (D.E. 197-2, 197-3).

By defaulting, SAM Eagle has admitted to the well-pleaded allegations of fact in the complaint and is barred from contesting those facts on appeal. *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). SAM Eagle is therefore liable to Credit Suisse in the amount of $6,398,809.95, and Credit Suisse is further entitled to reimbursement for the $1,436,945.15 in *custodia legis* expenses for the services that Credit Suisse performed to maintain and preserve the vessel while it was under arrest. The *custodia legis* expenses take priority over the preferred ship mortgage, but because Credit Suisse is the only remaining claimant to the proceeds of the sale, it is unnecessary to further analyze the hierarchy of competing liens under maritime law. *See, e.g., Rayon Y Celanese Peruana v. M/V PHGH*, 471 F. Supp. 1363, 1369 (S.D. Ala. 1979) (discussing lien priority).

## III. RECOMMENDATION

Accordingly, it is recommended that Credit Suisse's motion for entry of default and default judgment (D.E. 197) be GRANTED. It is further recommended that a final judgment be rendered for Credit Suisse providing for: (1) $1,436,945.15 from the *res* in the Court's registry as reimbursement for *custodia legis* expenses; (2) the remainder of the vessel sale proceeds, plus any accrued interest, as reimbursement for the preferred ship mortgage on Credit Suisse's *in rem* claim; and (3) $6,398,809.95 against SAM Eagle for the preferred ship mortgage on Credit Suisse's *in personam* claim, with SAM Eagle to receive a credit for the amount that Credit Suisse receives from the *res* as reimbursement for the preferred ship mortgage on the *in rem* claim.

Respectfully submitted on February 3, 2021.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).